IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 11–cv–01802–CMA–KMT

DIAMOND DEMMER,

      Plaintiff,

v.

ROBERT FITZGIBBONS, and
THE CITY AND COUNTY OF DENVER,

      Defendants.

---

## ORDER

      This matter is before the court on Plaintiff's "Motion to Amend Scheduling Order – Discovery Cut-Off." (Doc. No. 47, filed Mar. 6, 2012 [Mot.].)  After the court expedited briefing (*see* Doc. Nos. 49 & 53), Defendants filed a response on March 8, 2012 (Doc. No. 52) and Plaintiff filed a Reply later that same day (Doc. No. 54).  Accordingly, this matter is ripe for the court's review and ruling.

      Plaintiff's Motion seeks to amend the Scheduling Order to extend the Discovery Cut-Off deadline in order to propound additional requests for production of documents to Defendants. (Mot. ¶ 1.)  A scheduling order may be amended only upon a showing of good cause.  Fed. R. Civ. P. 16(b)(4).

      Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to

> modify the scheduling order to permit the proposed amendment.  Properly construed, "good cause" means that the scheduling deadlines cannot be met despite a party's diligent efforts . . . .  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Colo. Visionary Academy v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000) (internal citations and quotations omitted); *see also Strope v. Collins,* 315 F. App'x 57, 61 (10th Cir. 2009) (quoting *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir. 2004)) ("Demonstrating good cause under [Rule 16(b)(4)] 'requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for the delay.'")  "Indifference by the moving party seals off this avenue of relief irrespective of prejudice  because such conduct is incompatible with the showing of diligence necessary to establish good cause.  *O'Connell v. Hyatt Hotels of Puerto Rico,* 357 F.3d 152, 155 (1st Cir. 2004) (internal quotations, alterations, and citation omitted).

In this case, Plaintiff alleges that, on July 2, 2010, she was struck in the legs, abdomen, and torso by fragments from five "hollow point" bullets that Defendant Fitzgibbons, a former police officer with the Denver Police Department (DPD), fired at a nonparty individual. (Compl., Doc. No. 2, filed July 11, 20122, ¶¶ 3-6.)  Plaintiff alleges that Defendant Fitzgibbons use of the hollow point ammunition and an AR-15-type rifle violated DPD policy and procedures, created an unreasonable risk of harm to innocent bystanders, and constituted excessive force under the circumstances.  (*Id.* ¶¶ 4-5.)

In support of the proposed extension of the Scheduling Order's Discovery Cut-Off, Plaintiff's counsel asserts that he recently learned "an enormous amount of highly relevant information not previously revealed to Plaintiff's counsel" when he attended a Civil Service Commission hearing in Defendant Fitzgibbons' appeal of his termination from the DPD. (Mot. ¶ 4.) Specifically, Plaintiff's counsel claims that he learned (1) that Defendant Fitzgibbons had not completed the Urban Rifle Training Course required by DPD—indeed he had been turned down for the course on several occasions due to concerns regarding his maturity, responsibility, and reliability—and therefore was using the weapon at issue in the case without authorization; (2) that only 72 hours prior to the shooting, Defendant Fitzgibbons asked a supervising lieutenant whether, in light of a change in command at DPD, he would be permitted to enroll in the Urban Rifle Training Course, which suggests that Defendant Fitzgibbons knew he was without the proper training at the time of the incident; (3) that important, but unspecified, details existed as to the circumstances under which Defendant Fitzgibbons acquired the unauthorized weapon and ammunition; (4) that Defendant Fitzgibbons has a history of internal affairs investigations, including allegations of excessive force and officer dishonesty; and (4) that an in-depth investigation relating to the July 2, 2010 shooting was undertaken, which purportedly included numerous interviews of Defendant Fitzgibbons and others. (Mot. ¶¶ 5–8.) Plaintiff seeks to extend the Scheduling Order to serve Defendants with additional discovery requests relating to these topics.

The allegations in Plaintiff's Complaint, however, clearly demonstrate that she was aware that Defendant Fitzgibbons violated City policy by using an unauthorized weapon and

ammunition, and that third-party victims, including Plaintiff, were injured during this police

shooting.  (Compl. ¶¶ 4-6.)  It would be abundantly clear to an attorney as well-known and

experienced as Plaintiff's counsel that, under these circumstances, an Internal Affairs

Department investigation into the incident, particularly with respect to the alleged police shooter,

Defendant Fitzgibbons, would be inevitable.  Consequently, the court finds that a diligent litigant

would have immediately propounded discovery directed at obtaining the complete internal

investigation file and records.  Further, Plaintiff's counsel obviously was aware that Defendant

Fitzgibbons was terminated from employment as a result of this incident; thus, diligent counsel

would have also attempted to obtain the employment file and other information underlying the

termination.

Plaintiff's counsel nevertheless failed to propound any discovery to Defendants regarding

either investigation, nor did counsel make an absolutely routine inquiry as to any allegations of

prior misconduct by Defendant Fitzgibbons.  As Defendants persuasively note, Plaintiff had

sixth months to conduct such discovery, and therefore had ample opportunity to take the

depositions of Defendant Fitzgibbons and Officer Schledwitz, the second officer involved in the

shooting incident.  (Resp. ¶¶ 5-6.)

Plaintiff does not directly dispute that she had ample time to conduct such discovery;

instead, she maintains that she chose not to take these depositions for strategic reasons.

Specifically, Plaintiff's counsel concluded that sworn statements taken by a lieutenant at the time

of the incident would suffice for effective cross-examination of Defendant Fitzgibbons and

Officer Schledwitz at trial.  (Reply ¶ 2.)  The court will generously conclude that such a

'strategic' decision was based on the cost of discovery.  Plaintiff's counsel was certainly free to elect this discovery approach; however, a necessary consequence of such a decision is that Plaintiff did not learn details that more expansive discovery might have disclosed.  Plaintiff's late reevaluation of her discovery decision in light of information gleaned from an attorney's more diligent efforts in another case, however, does not demonstrate good cause to amend the Scheduling Order.

Plaintiff also maintains that the court should extend the Discovery Cut-Off in order to reach a just result and because there is no prejudice to Defendants.  (Reply ¶ 3.)  The "new" information learned by Plaintiff with respect to the training of Defendant Fitzgibbons's use of the unauthorized firearm was disclosed at an appeal hearing.  Therefore, Plaintiff is free to use the information gleaned from that hearing consistent with the Federal Rules of Evidence.  What Plaintiff seeks by extending discovery deadlines is to be allowed to further explore the information in the pretrial context.  This is discovery that she already deliberately eschewed prior to finding out that it might be more helpful to her case than she had previously guessed.  Plaintiff is not foreclosed from calling individuals who were involved in the Civil Services Commission hearing, nor Defendant Fitzgibbons himself, as witnesses at trial.  To be sure, Plaintiff may be unable to accurately predict the nature of their trial testimony; however, again, Plaintiff alone bears the burden of this result by way of her volitional choice not to avail herself of available discovery.  Finally, the fact that Defendants might not be unduly prejudiced by an extension of the Discovery Cut-Off is irrelevant, as the Rule 16(b)(4) inquiry properly focuses

on Plaintiff's diligence, rather than the prejudice to Defendants.  *Colo. Visionary Academy,* 194

F.R.D. at 687.

In sum, the court finds that Plaintiff has failed to fulfill Rule 16(b)(4)'s good cause

requirement by demonstrating that diligent efforts could not have uncovered the additional

discovery she now seeks.  Rather, the court finds that diligent efforts likely would have

uncovered this information.  A "Scheduling Order is not a frivolous piece of paper, idly entered,

which can be cavalierly disregarded by counsel without peril." *Washington v. Arapahoe Cnty.*

*Dept. of Soc. Servs.,* 197 F.R.D. 439, 441 (D. Colo. 2000) (internal quotations and citations

omitted).  "To the contrary, a scheduling order is an important tool necessary for the orderly

preparation of a case for trial." *Id.* (citation omitted).  Plaintiff chose a deliberate course of

action to forego discovery that might have uncovered the "highly relevant" extra information she

now seeks and must, therefore, bear the consequences of her choice.

Therefore, for the foregoing reasons, it is

ORDERED that

Plaintiff's "Motion to Amend Scheduling Order – Discovery Cut-Off" (Doc. No. 47) is

DENIED.

Dated this 14th day of March, 2012.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

6